Arthur GEDDES, Plaintiff–Appellant,

v.

AMERICAN AIRLINES, INC., Terry Meenan, Defendants–Appellees.

No. 02–13885.

United States Court of Appeals, Eleventh Circuit.

Feb. 21, 2003.

Carolyn Myers-Simmonds, Fort Lauderdale, FL, Deborah Marks, Miami, FL, for Plaintiff–Appellant.

Angel Castillo, Jr., Lisa Rothberg Askowitz, Morgan, Lewis & Bockius, LLP, Terence Conner, Richard B. Celler, Vernis & Bowling of Miami, P.A., Miami, FL, for Defendants–Appellees.

Before BARKETT and WILSON, Circuit Judges, and LIMBAUGH *, District Judge.

BARKETT, Circuit Judge:

Arthur Geddes, an aircraft technician, originally filed a complaint in Florida state court against his employer American Airlines ("American") claiming damages resulting from the torts of defamation, negligence, and negligent supervision and retention. American, a Texas corporation, removed the case to federal district court, asserting that federal law completely preempted Geddes's state law tort claims, and thus, removal was appropriate on the basis of federal question jurisdiction.[1] Geddes challenged this jurisdictional ground, moving to remand the case back to state court. The district court denied Geddes's motion, finding that the Railway Labor Act ("RLA"), 45 U.S.C. § 184 (1986), completely preempted the state tort claims, and it applied the RLA to dismiss the complaint. Geddes, arguing that removal was improper, appeals from the denial of his motion to remand the case to state court and from the dismissal of his complaint.

## BACKGROUND

Geddes's complaint alleges that, during his employment at Miami International Airport, a co-worker reported to management that Geddes had threatened him with violence. American began an investigation of Geddes's alleged misconduct and temporarily suspended him. The complaint alleges that American knew the accusation was false but nonetheless published it and failed to stop the spread of false statements related to it.

American maintains that they acted in accordance with the requirements of the collective bargaining agreement ("Agreement") between American and the Transport Workers Union of America. The Agreement, concerning "rates of pay, rules, and working conditions," was made under and is governed by the RLA, 45 U.S.C. §§ 152, First, and 184. The RLA establishes a mandatory framework for the resolution of "minor disputes" over the interpretation of collective bargaining agreements, see *Brotherhood of R.R. Trainmen v. Chicago River & Ind. R.R. Co.*, 353 U.S. 30, 33, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957), reserving their adjudication exclusively to boards of adjustment. American argued that because the evaluation and adjudication of Geddes's claims

---

\* Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri, sitting by designation.

1. American also asserted diversity jurisdiction. In response, Geddes amended his complaint to include Florida resident Terry Meenan, a human resources manager at American, and argued that by adding a Florida resident, diversity jurisdiction was eliminated. The district court found no diversity jurisdiction, and that finding is not an issue raised on appeal.

would require an interpretation of the Agreement, the complaint in effect raises a federal question, providing the basis for removal to the federal court. American then argued that the federal district court should dismiss the complaint because Geddes's allegations constituted "minor disputes" under the Agreement, and the RLA requires that minor disputes be sent to arbitration. The district court agreed with American and dismissed Geddes's claims. This appeal followed.

On appeal, Geddes argues that removal under 28 U.S.C. § 1441[2] was improper because: (1) the doctrine of complete preemption does not apply to the Railway Labor Act, and thus the district court lacks jurisdiction over his claims; and (2) even if complete preemption does apply to the RLA, the RLA does not apply to his claims because they lie outside of the collective bargaining agreement governing his employment and do not implicate any interpretation or application of the agreement.

## STANDARD OF REVIEW

■ The issue before us is whether the district court correctly determined that Geddes's claims are completely preempted by the RLA, thus giving the district court jurisdiction. Whether a district court may exercise jurisdiction over a case based upon complete preemption is a question of law that this Court reviews *de novo*. *BLAB T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc.,* 182 F.3d 851, 854 (11th Cir.1999).

## DISCUSSION

### I

■ In order to determine whether removal to federal court was proper on the grounds that Geddes's claim was completely preempted by federal law, we must again clarify the differences between "complete" preemption and "ordinary" preemption. *See BLAB T.V.,* 182 F.3d at 854. Preemption is the power of federal law to displace state law substantively.[3] The federal preemptive power may be complete, providing a basis for jurisdiction in the federal courts, or it may be what has been called "ordinary preemption," providing a substantive defense to a state law action on the basis of federal law.

■ More specifically, ordinary preemption may be invoked in both state and federal court as an affirmative defense to the allegations in a plaintiff's complaint. Such a defense asserts that the state claims have been substantively displaced by federal law. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *BLAB T.V.,* 182 F.3d at 855. However, a case may *not*

**2.** 28 U.S.C. § 1441(a) provides that a defendant may remove any civil action filed in state court to a federal court if the federal court has original jurisdiction over the action, which under 28 U.S.C. § 1441(b) may arise from the diversity of the parties or a federal question.

**3.** This power derives from the Supremacy Clause of Article VI of the Federal Constitution, which provides that

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. Art. VI, cl. 2. *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 208, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) (citing *Gibbons v. Ogden,* 9 Wheat. 1, 6 L.Ed. 23 (1824) (explaining that a state law that is contrary to or interferes with a federal law must yield to the federal law)).

be removed to federal court on the basis of a federal defense, including that of federal preemption. *Caterpillar*, 482 U.S. at 393, 107 S.Ct. 2425.

Complete preemption, on the other hand, is a doctrine distinct from ordinary preemption. Rather than constituting a defense, it is a narrowly drawn jurisdictional rule for assessing federal removal jurisdiction when a complaint purports to raise only state law claims. *See id.* at 393, 107 S.Ct. 2425. It looks beyond the complaint to determine if the suit is, in reality, "purely a creature of federal law," even if state law would provide a cause of action in the absence of the federal law. *Id.* It transforms the state claim into one arising under federal law, thus creating the federal question jurisdiction requisite to removal to federal courts. *See Metropolitan Life Ins. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) ("Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.").

The Supreme Court and this Circuit have found complete preemption only under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a). *See Anderson v. H & R Block, Inc.*, 287 F.3d 1038, 1042 (11th Cir. 2002); *BLAB T.V.*, 182 F.3d at 855. The Supreme Court has cautioned that complete preemption can be found only in statutes with "extraordinary" preemptive force. *See Caterpillar*, 482 U.S. at 393, 107 S.Ct. 2425; *Metropolitan Life*, 481 U.S. at 65, 107 S.Ct. 1542. Moreover, that "extraordinary" preemptive force must be manifest in the clearly expressed intent of Congress. *See Anderson*, 287 F.3d at 1047; *cf. Metropolitan Life*, 481 U.S. at 66, 107 S.Ct. 1542 (finding a clear manifesta-

tion of Congress's intent to make causes of action within the scope of section 502 of ERISA removable). Indeed, in "the absence of explicit direction from Congress," the Supreme Court has indicated its reluctance to find the extraordinary preemptive power necessary for complete preemption. *Id.* at 64–65, 107 S.Ct. 1542. Thus, the complete preemption inquiry turns on the question of "whether Congress not only intended for a federal statute to provide a defense to state-law claims, but also intended to confer on defendants the ability to remove a case to a federal forum." *Anderson*, 287 F.3d at 1041.

In summary, a federal law may substantively displace state law under ordinary preemption but lack the extraordinary force to create federal removal jurisdiction under the doctrine of complete preemption. If no other grounds for federal jurisdiction exist in such cases, then it falls to the state courts to assess the merits of the ordinary preemption defense. *See Caterpillar*, 482 U.S. at 398 n. 13, 107 S.Ct. 2425 (leaving the merits of ordinary preemption arguments to be addressed first by the state court). Under this framework, we address the question of whether the RLA completely preempts Geddes's state law claims and provides the requisite federal question jurisdiction to support removal to the federal court pursuant to 28 U.S.C. § 1441(a).

II

Whether the Railway Labor Act has the extraordinary preemptive force necessary to create federal removal jurisdiction is a question of first impression for this Court. We begin the inquiry into congressional intent by looking first to the language and substance of the Railway Labor Act itself. The RLA regulates labor relations between air carriers and their employees, *see* 45 U.S.C. § 181, with

a general purpose "to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 151a. These disputes, "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation," are known as "minor disputes." *Trainmen*, 353 U.S. at 33, 40, 77 S.Ct. 635. "Congress' purpose in passing the RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). This comprehensive framework establishes a system of adjustment boards with exclusive and mandatory jurisdiction to handle minor disputes, *see* 45 U.S.C. § 184, thus keeping them out of courts altogether. *See Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 94, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978) ("Congress considered it essential to keep these so-called 'minor disputes' within the Adjustment Board and out of the courts."); *Pyles v. United Air Lines, Inc.*, 79 F.3d 1046, 1050 (11th Cir.1996) ("Congress intended that these 'minor disputes' be resolved through the grievance procedures of the RLA rather than in federal court."). The RLA permits narrow federal judicial review of adjustment board decisions, *see* 45 U.S.C. § 153, but the statute includes no language granting general jurisdiction over minor disputes to federal courts.

Looking to the legislative history of the RLA, we see that it represented an agreement to arbitrate certain disputes, *see Trainmen*, 353 U.S. at 37–39, 77 S.Ct. 635 (discussing the legislative history of the mandatory boards of adjustment), but we find nothing to suggest that Congress intended to allow parties to *litigate* RLA minor dispute claims in federal court. *See Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R.R. Co.*, 858 F.2d 936, 942 (3d Cir.1988) (finding no evidence of congressional intent to make RLA claims removable in the legislative history). Nor do we find any indication that Congress intended for federal courts to acquire jurisdiction solely to ensure that minor disputes are redirected from the courts to the boards of adjustment.

In stark contrast, both the LMRA and ERISA have express language creating a federal cause of action for the resolution of disputes. *See* 29 U.S.C. § 185(a) (1998) ("Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties"); 29 U.S.C. § 1132(f) (1999) ("The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action.").

The federal cause of action language in the LMRA has been interpreted as authorizing federal courts to fashion a body of federal law for enforcement of these collective bargaining agreements. *See Textile Workers Union v. Lincoln Mills of Ala.*, 353 U.S. 448, 451 (1957); *see also Allis–Chalmers*, 471 U.S. at 209–210, 105 S.Ct. 1904 (discussing the interpretation of section 301 in *Lincoln Mills* and subsequent cases). Similarly, the legislative history of ERISA clearly expressed Congress's intent for ERISA suits to "be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the [LMRA]." *Metropolitan Life*, 481 U.S. at 65–66, 107 S.Ct. 1542 (citing H.R. Conf. Rep. No. 93–1280, p. 327 (1974)). This virtually identical statutory

language, accompanied by explicit direction from Congress in the legislative history, forms the primary basis for concluding that Congress intended removability by complete preemption under the two statutes. *See Anderson,* 287 F.3d at 1043; *BLAB T.V.,* 182 F.3d at 855; *see also Metropolitan Life,* 481 U.S. at 65–66, 107 S.Ct. 1542. The Railway Labor Act's language and legislative history, in contrast, indicate no such clear congressional intent to authorize federal court jurisdiction.[4]

In finding complete preemption in this case, the district court reasoned that the similarities between the RLA and the LMRA are sufficiently strong to extend complete preemptive power to the RLA. The district court relied largely on the Supreme Court's opinion in *Hawaiian Airlines,* 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203, pointing to a footnote that cited "the common purposes of the two statutes, the parallel development of RLA and LMRA [ordinary] pre-emption law, and the desirability of having a uniform common law of labor law pre-emption." District Court Order at 8 (citing *Hawaiian Airlines,* 512 U.S. at 263 n. 9)(internal citations omitted).

There is indeed some language in *Hawaiian Airlines* that might lead one to conclude that the analogy between the LMRA and the RLA should extend to application of the doctrine of complete preemption. However, there are also significant distinguishing factors that persuade us that such language is not controlling here. The primary difference is that *Hawaiian Airlines* dealt strictly with the substantive defense of ordinary federal preemption as it was applied in state court

and was not concerned at all with removal under 28 U.S.C. § 1441(a). The case came before the Supreme Court on certiorari review of a decision by the Hawaii Supreme Court, which had ruled on the ordinary preemption defense. Removal to federal district court through complete preemption was not an issue in the case.

In *Hawaiian Airlines,* an airline mechanic, Grant Norris, had brought two suits in state court against his former employer for wrongful retaliatory discharge. In both cases, the defendants responded with an ordinary preemption defense, that is, they moved to dismiss for lack of subject matter jurisdiction, arguing that under the RLA, Norris' claims constituted "minor disputes" which must be resolved through arbitration. Thus, the exclusive arbitral procedures of the RLA preempted Norris's state tort claims. The state trial court agreed and dismissed Norris's tort claims in favor of the arbitration required by the RLA. *See Hawaiian Airlines,* 512 U.S. at 251, 114 S.Ct. 2239. On appeal, the Hawaii Supreme Court reversed in both cases, concluding that the RLA did not preempt Norris's state tort actions because the claims did not require interpretation of a collective bargaining agreement. *Id.* at 251–52, 114 S.Ct. 2239.

In affirming the Hawaii Supreme Court's decision, the *Hawaiian Airlines* Court examined the scope of ordinary preemption under the RLA to determine whether Norris's state claims for wrongful retaliatory discharge could be pursued under state law, or whether they constituted a minor dispute that could only be redressed through the RLA arbitral mecha-

---

4. Indeed, in *Caterpillar,* the Supreme Court noted that even under the LMRA, not every dispute concerning employment is completely preempted, even if it is asserted by someone covered by a collective bargaining agreement governed by the LMRA. *Caterpillar,* 482 U.S. at 396 n. 10, 107 S.Ct. 2425 (clarifying that not all employment-related matters involving unionized employees must be resolved through collective bargaining and governed by federal common law).

nism. *See id.* at 248, 114 S.Ct. 2239. Rejecting the "pervasive pre-emption" of all issues touching on the employment relationship, *id.* at 255 n. 5, 114 S.Ct. 2239, the Supreme Court held that the RLA's mandatory grievance procedures do not preempt causes of action to enforce rights and obligations independent of a collective bargaining agreement. In doing so, the Court adopted the same standard for ordinary preemption under both the RLA and the LMRA: a state law claim is preempted only if its resolution requires the interpretation of the collective bargaining agreement, but not if the claim turns on purely factual questions that can be resolved without interpreting the agreement. *Id.* at 260–63, 114 S.Ct. 2239. Because complete preemption was not an issue in the case, the Court did not engage in any inquiry into congressional intent to permit removal, nor did it have occasion to discuss the standard for complete preemption.

Moreover, in the same footnote cited by the district court, the Supreme Court acknowledged that the LMRA and the RLA "are not identical in language, history and purpose. The LMRA, unlike the RLA, does not mandate arbitration, nor does it prescribe the types of disputes to be submitted to arbitration under bargaining agreements." *Hawaiian Airlines,* 512 U.S. at 263 n. 9, 114 S.Ct. 2239. Although the similarities between the two laws lead to the same substantive ordinary preemption standard, the Supreme Court has never analyzed them in the context of complete preemption. For that analysis, we find the differences to be more compelling.

In particular, a principal rationale for complete preemption under the LMRA does not apply to the RLA precisely because the RLA grievance procedures are mandatory. Complete preemption ensures the creation of federal common law to avoid "the possibility of conflicting substantive interpretation under competing legal systems [that] would tend to stimulate and prolong disputes as to its interpretation ... [and] might substantially impede the parties' willingness to agree to contract terms providing for final arbitral or judicial resolution of disputes." *Allis–Chalmers,* 471 U.S. at 209–210, 105 S.Ct. 1904 (quoting *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 104, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962)). This uniformity rationale fails in the RLA context, however, because minor disputes under the RLA must be sent to arbitration and may not be heard by a court, in contrast to disputes under the LMRA. Both state and federal courts must dismiss a claim as preempted by the RLA once they determine that it requires interpretation of the collective bargaining agreement, *see Hawaiian Airlines,* 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203, and RLA system boards of adjustment provide the substantive, uniform interpretations of these labor agreements.

We have carefully considered the cases from other circuits cited by American Airlines that recognize complete preemption under the RLA.[5] However, we believe that these cases have relied on ordinary preemption principles rather than complete preemption principles, and we therefore do not find them persuasive. Moreover, in this circuit, we are bound by *Anderson,* 287 F.3d 1038, and *BLAB T.V.,* 182 F.3d 851, and their requirement of clear congressional intent to permit removal. Under the analysis contained therein, we con-

---

**5.** *See, e.g., Gore v. Trans World Airlines,* 210 F.3d 944, 949 (8th Cir.2000); *Shafii v. British Airways, PLC,* 83 F.3d 566, 569 (2d Cir.1996); *O'Brien v. Duluth, Missabe & Iron Range Ry.,* 27 F.3d 569 (7th Cir.1994); *Deford v. Soo Line R.R. Co.,* 867 F.2d 1080, 1084–86 (8th Cir.1989); *Schroeder v. Trans World Airlines, Inc.,* 702 F.2d 189, 191 (9th Cir.1983).

**1357**

clude that our circuit precedent precludes a finding of complete preemption in this case.

In conclusion, bearing in mind the Supreme Court's "reluctance" to find complete preemption absent any indication of Congress's clear intent to establish federal question jurisdiction, and failing to find such intent, we hold that the doctrine of complete preemption does not apply to the RLA.

### III

Because we find that the doctrine of complete preemption does not extend to the RLA's provisions governing minor disputes, we do not have jurisdiction to reach the question of whether Geddes's state claims are in fact preempted by federal law. We agree with the Third Circuit that "[s]tate courts are competent to determine whether state law has been preempted by federal law and they must be permitted to perform that function in cases brought before them, absent a Congressional intent to the contrary." *Railway Labor Executives Ass'n,* 858 F.2d at 942. Under *Hawaiian Airlines,* the standard for the defense of ordinary federal preemption under the RLA is clear. *Hawaiian Airlines,* 512 U.S. at 260–263, 114 S.Ct. 2239. In this case, the Florida state court is competent to apply it to Geddes's tort claims and determine whether the RLA preempts them, and it should be allowed to do so.

Because there is no federal question jurisdiction, this case is REVERSED and REMANDED to the district court for proceedings consistent herewith.