Barbara Ann **CHILLE,** a/k/a Barbara Ann McMillin, Plaintiff,

v.

**UNITED AIRLINES,** Defendant.

Barbara McMillin, Plaintiff,

v.

Hugh Johnson, Defendant.

Nos. 00–CV–6571L, 03–CV–6177L.

United States District Court,
W.D. New York.

Jan. 14, 2004.

Donna Marianetti, Webster, NY, Van Henri White, Rochester, NY, for Plaintiff.

Eric Rosenfeld, Laurie Robinson, Seyfarth Shaw, New York, NY, for Defendant.

## DECISION AND ORDER

LARIMER, District Judge.

## INTRODUCTION

Plaintiff, Barbara McMillin (formerly known as Barbara Chille), has commenced two actions relating to her termination from employment with United Airlines ("United") in March 2000. The first,

*Chille v. United Airlines,* has been stayed pursuant to 11 U.S.C. § 362(a), after United filed a suggestion of bankruptcy in December 2002. Plaintiff commenced the second action, *McMillin v. Johnson,* against her former supervisor at United, Hugh Johnson, in March 2003 in New York State Supreme Court (Monroe County). Johnson removed that action to this court in April 2003, asserting federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1441.

United and Johnson (both of whom are represented by the same counsel) have now moved to consolidate these two actions pursuant to Fed.R.Civ.P. 42(a). Defendant also moves to dismiss the complaint in *McMillin* for lack of subject matter jurisdiction, or in the alternative, to extend the automatic stay under § 362(a) to the *McMillin* action. Plaintiff has cross-moved for an order remanding *McMillin* to state court pursuant to 28 U.S.C. § 1447(c).[1]

## BACKGROUND

Plaintiff commenced the *Chille* action against United in November 2000, asserting claims (the substance of which is not important with respect to the motions now before the Court) under the Americans with Disabilities Act and the New York State Human Rights Law. In April 2002, plaintiff, with leave of court, filed a second amended complaint that added the following allegations:

> Additionally, as a result of the Plaintiff's disability and her requests that United accommodate that disability, United orchestrated Plaintiff's separation from United by forging a letter of resignation. This letter led to Plaintiff's involuntary

---

1. Inexplicably, plaintiff's notice of motion states that the cross-motion is made pursuant to Rule 15(a), which deals with amended pleadings. I deem the motion to have been made pursuant to § 1447(c), however.

separation from employment with United. This involuntary separation, which was procured by fraud and deceit, caused unnecessary financial hardship and intense emotional anguish and stress for the Plaintiff.

Docket # 34, ¶ 40.

Both parties subsequently moved for summary judgment in *Chille,* but while the motions were pending, United filed for bankruptcy under Chapter 11, and the automatic stay provision of § 362(a) took effect.

In March 2003, plaintiff commenced the *McMillin* action in state court. The *McMillin* complaint alleges, *inter alia,* that after plaintiff submitted a letter to Johnson requesting two weeks' vacation, Johnson "drafted an altered version of the ... letter" to indicate that plaintiff had resigned from her employment at United, and that "[t]his [altered] letter bore the forged signature of the Plaintiff." Docket # 1, Ex. Y, ¶ 9. Plaintiff alleges that "by virtue of this fraud and misrepresentation, the Plaintiff was separated from her employment with United and she has been damaged in the sum of $1,000,000.00." *Id.* ¶ 10. A second cause of action alleges that Johnson "intentionally and willfully interfered with [plaintiff's] employment contract [with United] by improper means." *Id.* ¶ 14.

Although the *McMillin* complaint, on its face, thus asserts only two claims under state law, defendant contends that it was properly removed to federal court on the ground that those claims are preempted by the Railway Labor Act, 45 U.S.C. § 151 *et seq.* Defendant asserts that plaintiff's claims "are inextricably intertwined" with certain issues relating to the collective bargaining agreement ("CBA") governing plaintiff's employment and, therefore, properly prosecuted in federal court. *See Hawaiian Airlines v. Norris,* 512 U.S.

246, 252–53, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994) (RLA establishes mandatory arbitral mechanism for settlement of "minor" disputes, which "involve 'controversies over the meaning of an existing collective bargaining agreement in a particular fact situation'") (quoting *Trainmen v. Chicago R. & I.R. Co.,* 353 U.S. 30, 33, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957)), and *id.* at 261, 114 S.Ct. 2239 ("where the resolution of a state-law claim depends on an interpretation of the CBA, the claim is preempted"). Defendant also asserts that this Court (indeed, any court) lacks subject matter jurisdiction because minor disputes "must be resolved *only* through the RLA mechanisms, including the carrier's internal dispute-resolution processes and an adjustment board established by the employer and the unions." *Id.* at 253, 114 S.Ct. 2239 (citing 45 U.S.C. § 184; emphasis added).

## DISCUSSION

I believe that the threshold issue here is whether the *McMillin* action should be remanded to state court. If the Court grants plaintiff's motion to remand, defendant's other motions will be moot.

■ Under 28 U.S.C. § 1441(a), a defendant may remove from state court to federal court "any civil action ... of which the district courts of the United States have original jurisdiction." It is the complaint that determines removal. "Normally, a defense that plaintiff's claims are preempted by federal law will not suffice to confer federal question jurisdiction, which must be determined by reference to the allegations that 'appear on the face of a well-pleaded complaint.'" *Marcella v. Capital Dist. Physicians' Health Plan, Inc.,* 293 F.3d 42, 45 (2d Cir.2002) (quoting *Plumbing Indus. Bd. v. E.W. Howell Co.,* 126 F.3d 61, 66 (2d Cir.1997)); *see also Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55

(1987) ("Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court").

■ There are exceptions to this general rule, however, two of which must be considered here. The first is the principle that "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 22, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (citation omitted). "If a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint." *Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998).

■ The second relevant exception applies to cases involving "complete preemption." Such cases involve claims that are "of necessity so federal in character that [they] arise[ ] under federal law for purposes of 28 U.S.C. § 1331." *Plumbing Indus. Bd.,* 126 F.3d at 66; *see also Rivet,* 522 U.S. at 475, 118 S.Ct. 921 ("The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim").

■ In these cases, and in all cases seeking remand, "the burden is on the defendant, as the party asserting federal jurisdiction, to demonstrate the propriety of removal." *Marcella,* 293 F.3d at 46; *see also Linardos v. Fortuna,* 157 F.3d 945, 947 (2d Cir.1998) ("It is also hornbook law that the party invoking federal juris-

diction bears the burden of proving facts to establish that jurisdiction"). In my view, defendant has failed to demonstrate that removal is appropriate.

First of all, as to the first exception to the well-pleaded complaint rule, there is no evidence that plaintiff engaged in artful pleading by omitting matters in the complaint for the purpose of defeating jurisdiction. The allegations in the complaint are clear and straightforward and nothing appears to be omitted just for the sake of defeating federal question jurisdiction.

As to the second exception, it is clear that complete preemption does not exist here under the RLA or any other federal statute. Concerning the RLA, as to whether the RLA completely preempts state law claims within its scope, there appears to be some disagreement among the circuits over this question. *Compare Gore v. Trans World Airlines,* 210 F.3d 944, 949 (8th Cir.2000) ("complete preemption [under the RLA] applies to disputes involving duties and rights created or defined by the collective bargaining agreement"), *cert. denied,* 532 U.S. 921, 121 S.Ct. 1358, 149 L.Ed.2d 288 (2001), *with Geddes v. American Airlines, Inc.,* 321 F.3d 1349, 1357 (11th Cir.2003) ("we find that the doctrine of complete preemption does not extend to the RLA's provisions governing minor disputes"), *cert. denied,* —— U.S. ——, 124 S.Ct. 386, 157 L.Ed.2d 276 (2003); *see also Holman v. Laulo–Rowe Agency,* 994 F.2d 666, 669 (9th Cir.1993) (noting conflict within Ninth Circuit over whether RLA has complete preemptive power).[2]

The Second Circuit did state in *Shafii v. British Airways, PLC,* 83 F.3d 566, 569 (2d Cir.1996), that "[i]f the state claims put

---

2. A search of later Ninth Circuit cases does not indicate that the conflict within that cir-

cuit has been resolved.

forward are in fact preempted by the RLA, the action may properly be removed to the federal courts, even when the plaintiff's complaint does not itself include a federal cause of action," but that statement was dictum, since the court went on to find that the plaintiff's claims in *Shafii* were not preempted, on the ground that resolution of those claims did not require interpretation of the CBA, but rather were "grounded on 'rights and obligations' that exist[ed] independent of" the CBA. *Id.* at 570 (quoting *Hawaiian Airlines,* 512 U.S. at 247, 114 S.Ct. 2239). *See also Solimo v. Metro–North Commuter R.R.,* 253 F.Supp.2d 733, 735 n. 1 (S.D.N.Y.2003) (opining that "[t]he Second Circuit ... is clearly of the opinion that the RLA ... offers complete preemption and thus removal jurisdiction for artfully pled state law complaints in the RLA field") (citing *Shafii,* 83 F.3d at 569); *but see Gay v. Carlson,* 60 F.3d 83 (2d Cir.1995) (noting that the Second Circuit's previously "expansive view of [RLA] pre-emption ... has been called into question by the Supreme Court's decision" in *Hawaiian Airlines* ).

I find it unnecessary to decide whether there is complete preemption under the RLA, however, because plaintiff's claims are not governed by the RLA in any event. Defendant contends that plaintiff's claims against Johnson present two issues governed by the RLA: whether plaintiff "quit or resigned" within the meaning of the CBA; and whether United acted within its rights under the CBA in refusing plaintiff's request that she be allowed to use her two weeks' vacation time as her two weeks' notice of resignation so as to preserve her eligibility for rehire. Notice of Removal ¶ 13. Key to defendant's claim that the RLA controls, is its belief that the CBA must be interpreted to resolve the dispute between these parties. Contrary to defendant's assertions, I find that these

issues, at least insofar as they relate to plaintiff's claims against *Johnson,* do not require any interpretation of, or even reference to, the CBA. As in *Shafii,* resolution of plaintiff's claims does not "depend on an interpretation of the [CBA]," but are "grounded on rights and obligations that exist independently under state law." 83 F.3d at 570. *See also Rice v. Panchal,* 65 F.3d 637, 644 (7th Cir.1995) ("where the plaintiff seeks recovery for breach of a duty imposed by state law, and the claim does not involve the interpretation of contract terms, there is no complete preemption under the ... RLA"); *Anderson v. American Airlines, Inc.,* 2 F.3d 590, 595 (5th Cir.1993) ("if a plaintiff's state law claim does not require an interpretation of a collective bargaining agreement, then the claim does not involve a minor dispute, the RLA does not pre-empt the claim, and a state court is a proper forum").

The Supreme Court stated in *Hawaiian Airlines* that " 'purely factual questions' about an employee's conduct or an employer's conduct and motives do not 'requir[e] a court to interpret any term of a collective-bargaining agreement.' " 512 U.S. at 261, 114 S.Ct. 2239 (quoting *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 407, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988)). Such "purely factual questions" are all that is presented here.

Other courts when faced with analogous situations have found no federal jurisdiction because provisions of the CBA were either not in dispute or needed no interpretation. For example, in *Foy v. Pratt & Whitney Group,* 127 F.3d 229 (2d Cir. 1997), several former employees of the defendant brought a suit in state court alleging that their manager had induced them to forgo a limited transfer opportunity by falsely assuring them that another opportunity would be afforded at some later time prior to layoff. The defendant re-

moved the action to federal court on the sole jurisdictional ground that the action was preempted by § 301 of the Labor Management Relations Act ("LMRA")[3]. The district court denied the plaintiffs' motion to remand, and granted the defendant's motion on the ground of *Garmon* preemption under the National Labor Relations Act ("NLRA"). *See San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 245, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

On appeal, the Second Circuit held that removal was improper, and vacated the judgment and remanded with instructions to remand the case to state court.[4] In so ruling, the court rejected the defendant's argument that resolution of the plaintiffs' negligent-misrepresentation claims required interpretation of certain provisions of the CBA relating to the defendant's right to offer transfers to another job prior to a layoff and to the employees' right to be given the opportunity to move along with their unit if the unit were transferred. As to the former provision, the court stated,

> Assuming that the alleged misrepresentation was made, interpretation of this provision would not be necessary to resolve plaintiffs' state law claims. Either the alleged pre-layoff transfer offer was made pursuant to the provision or not, a question of employer intent that does not depend on an interpretation of the language in the provision.

*Foy,* 127 F.3d at 235.

Similarly, as to the provision dealing with transfers, the court stated that although "one might consult this provision in determining whether plaintiffs' [sic] justifiably relied on that alleged unqualified promise, . . . reasonable reliance is primarily a fact question as to (1) what the plaintiffs believed, and (2) the circumstances surrounding the misrepresentation made by the employer." *Id.* The court added that "[t]hese plaintiffs' state law misrepresentation claims depend upon the employer's behavior, motivation, and statements, as well as plaintiffs' conduct, their understanding of the alleged offer made to them, and their reliance on it." *Id.*

Likewise, in *Gay,* in which the plaintiff asserted various state law claims that revolved around certain reports of misconduct made against him by the defendant and an alleged conspiracy to have him fired by his employer, the court of appeals held that the plaintiff's

> state-law claims of defamation, prima facie tort and conspiracy (which is dependent upon the first two) are not preempted by the Railway Labor Act. No interpretation of the collective bargaining agreement is required to resolve these claims. State law provides the only source of the rights asserted by Gay-the right to be free of defamation and the right to be free from the infliction of intentional harm. The only questions that need to be resolved in Gay's lawsuit are purely factual questions that center upon his conduct and upon the conduct and motives of his fellow employees, the defendants in the action.

60 F.3d at 88. *See also Hernandez v. Conriv Realty Associates,* 116 F.3d 35, 39–40 (2d Cir.1997).

---

**3.** The Supreme Court in *Hawaiian Airlines,* 512 U.S. at 246–47, 114 S.Ct. 2239, stated that "[t]he RLA pre-emption standard . . . that a state-law cause of action is not pre-empted if it involves rights and obligations that exist independent of the CBA . . . is virtually identical to the pre-emption standard employed in cases involving § 301 of the LMRA."

**4.** The court found it unnecessary to reach the issue of *Garmon* preemption under the NLRA.

And in *Shafii,* the Second Circuit held that the plaintiff's state-law claim that the defendant airline fired him in violation of a mediation agreement between the plaintiff and the airline did not require interpretation of the CBA applicable to the plaintiff, and therefore was not preempted by the RLA and not removable. The court stated that "the fact that one part of the mediation agreement can be understood only in relation to the CBA does not mean that every part of the mediation agreement requires us to parse the CBA." 83 F.3d at 570. The court added,

> The portion of the mediation agreement on which Shafii rests his claim of breach of contract, instead, contains no reference to the CBA, nor does its interpretation require any such reference. A state court can determine, as a matter of state contract law, whether the airline's decision to fire Shafii was a violation of the terms of the mediation agreement, and can do so without looking into the CBA.

*Id.* at 570. In addition, the court held that the plaintiff's retaliatory-discharge claim, "which primarily depend[ed] on a determination of the employer's motive for firing [the plaintiff]-d[id] not require an interpretation of the CBA." *Id.*

Defendant attempts to distinguish *Shafii* on the ground that the plaintiff in *Shafii* "was protected from wrongful termination, not by the terms of his collective bargaining agreement, but by state anti-discrimination and anti-retaliation laws and the terms of the mediation agreement." Defendant's Reply Memorandum of Law at 10. Defendant contends that plaintiff in the cases at bar "does not allege that she has any relevant rights that arise under state law, independent of the [CBA]."

This argument is not persuasive. Plaintiff's claims against United in *Chille* may or may not implicate the CBA, but her claims against Johnson in *McMillin* are not based on any allegation that he violated her rights *under the CBA.* Plaintiff alleges that Johnson, in effect, engineered her termination from United by means of a forged or doctored letter that purported to be her notice of resignation. I fail to see how that requires interpretation of the CBA.

Defendant also argues that the CBA is plaintiff's only possible source of a right to continued employment, because plaintiff had no employment contract, and New York is an "at-will employment" state. Such an argument misses the point. Plaintiff's claim against Johnson in *McMillin* is not that she had an enforceable right to employment under the CBA, but that Johnson breached a duty or duties that he owed to her under common law, independent of the CBA. *See Gay,* 60 F.3d at 88 ("State law provides the only source of the rights asserted by Gay-the right to be free of defamation and the right to be free from the infliction of intentional harm"). Plaintiff's loss of employment is really just an aspect of her damages, which were allegedly incurred by Johnson's tortious acts. The Court expresses no view as to whether plaintiff's status as an at-will employee defeats her claims under New York law, but the simple fact is that resolution of those claims does not require reference to the CBA.

In that regard, it is noteworthy that defendant has not pointed to any provision of the CBA which he contends *would* require interpretation, or which would even need to be referred to, in order to resolve plaintiff's claims against Johnson. Defendant's notice of removal asserts that plaintiff's claims in *McMillin* are inextricably intertwined with the issues of whether plaintiff "quit or resigned" within the meaning of the CBA, and whether United was justified under the CBA in denying plaintiff's request to use her two weeks'

vacation time as her two weeks' notice of resignation. Notice of Removal ¶ 13. As to the latter question, however, the propriety of *United's* actions are not at issue in *McMillin.* It is not a question of whether plaintiff quit or resigned "within the meaning of" the CBA; it is simply a question of whether she *actually* resigned, or whether Johnson deceitfully made it *appear* that she had done so. That is a "purely factual" question that "do[es] not requir[e] a court to interpret any term of a collective-bargaining agreement." *Hawaiian Airlines* 512 U.S. at 261, 114 S.Ct. 2239 (internal quote omitted).

I also find defendant's reliance on *Solimo* to be misplaced. The plaintiff in *Solimo* alleged that his former employer had refused-in violation of a promise that it had allegedly made to him-to allow him to return to his prior employment after he had sustained an on-the-job injury. Finding the plaintiff's state law claims to be preempted by the RLA, the court stated that the "immediate question before the Court" was "whether Mr. Solimo had proven himself medically eligible for employment under the collective bargaining agreement." If he were not medically fit for duty as required by the CBA, the plaintiff would have had no right to return to work in the first place. Accordingly, "[u]nlike *Hawaiian Airlines* or *Shafii v. British Airways,* [*Solimo*] [*wa*]s a case where the CBA [wa]s the only source of Solimo's right not to be discharged wrongfully." *Solimo,* 253 F.Supp.2d at 735.

That is a far different situation from the one presented in *McMillin.* The right asserted in *McMillin* is not a right to continued employment under the CBA, but a right not to be victimized by fraudulent behavior, or not to have one's employment relationship interfered with by improper means. Whether plaintiff prevails in state court for violation of these rights remains to be seen, but the CBA is not the source of those rights, and will not need to be applied or interpreted in determining the merits of plaintiff's claims.

I conclude, therefore, that plaintiff has pleaded purely state law claims presenting factual questions, which do not require reference to or interpretation of the CBA. Accordingly, those claims are not preempted by the RLA. The *McMillin* action, therefore, was not properly removed to federal court, and it must be remanded to state court.

### CONCLUSION

Plaintiff's motion to remand (Docket # 7) in *McMillin v. Johnson,* 03–CV–6177, is granted, and that action is remanded to New York State Supreme Court, Monroe County.

Defendant's motion to dismiss for lack of subject matter jurisdiction in *McMillin* (Docket # 2) is denied. Defendant's motions to consolidate *McMillin* with *Chille v. United Airlines,* 00–CV–6571, and to extend the automatic stay of *Chille* to the *McMillin* action (Docket # 2 in *McMillin* and Docket # 46 in *Chille* ) are denied as moot.

IT IS SO ORDERED.