*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0025p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

JAMES T. RODDY,

                      *Plaintiff-Appellant,*

     *v.*

GRAND TRUNK WESTERN RAILROAD INCORPORATED;
TRACY MILLER; LAWRENCE T. WIZAUER; DAVID
CROMIE; PETER BRANDON; THOMAS WILLETT;
LAWRENCE R. MARTENIS,

                    *Defendants-Appellees.*

No. 02-2499

>

─────────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-72976—Nancy G. Edmunds, District Judge.

Argued: April 28, 2004

Decided and Filed: January 14, 2005

Before: MARTIN and ROGERS, Circuit Judges; BELL, Chief District Judge.[*]

─────────────────

## COUNSEL

**ARGUED:** Douglas A. McKinney, Auburn Hills, Michigan, for Appellant. Gregory A. Clifton, DURKIN, McDONNELL, CLIFTON, DAVIS & O'DONNELL, Detroit, Michigan, for Appellees. **ON BRIEF:** Douglas A. McKinney, Auburn Hills, Michigan, for Appellant. Gregory A. Clifton, DURKIN, McDONNELL, CLIFTON, DAVIS & O'DONNELL, Detroit, Michigan, for Appellees.

─────────────────

## OPINION

─────────────────

BELL, Chief District Judge. Plaintiff-Appellant James T. Roddy ("Roddy") appeals the district court's denial of his motion to remand and the district court's subsequent grant of summary judgment in favor of the Defendants-Appellees, Grand Trunk Western Railroad, Inc., Tracy Miller, Lawrence T. Wizauer, David Cromie, Peter Brandon, Thomas Willett and Lawrence Martenis (collectively referred to as "Grand Trunk"). For the reasons that follow we reverse the denial of the motion to remand, vacate the

───────────────────

[*]The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

entry of summary judgment, and remand to the district court with instructions to enter an order remanding the entire case to state court.

## I.

Roddy alleged in his complaint that he began his employment for Grand Trunk in 1965 as a brakeman. In 2000 Roddy was employed by Grand Trunk as a conductor. On July 11, 2000, while driving a motor vehicle on personal business, Roddy was subjected to a routine traffic stop by the City of Durand, Michigan, Police Department. He was arrested and jailed on misdemeanor charges including possession of marijuana. Roddy's wife notified Grand Trunk that Roddy was unavailable for work on the night of July 11, 2000.

Roddy alleged in his complaint that the individual defendants, who are employees and/or agents of Grand Trunk, requested, made or maintained a record of information regarding Roddy's misdemeanor arrest or detention. Based upon those records Grand Trunk conducted a formal company investigation on a charge of possession of marijuana and ultimately terminated Roddy's employment. The misdemeanor charges that had been filed against Roddy on July 11, 2000, were eventually dismissed and no conviction resulted.

Roddy commenced this action in the Circuit Court for the County of Shiawassee, State of Michigan, alleging that Grand Trunk's conduct in requesting, making or maintaining a record of the misdemeanor arrest where a conviction did not result, and their conduct in threatening, coercing, and/or ordering Roddy to release information regarding the misdemeanor arrest or face further disciplinary action violated Roddy's rights under the Michigan Elliott Larsen Civil Rights Act, M.C.L. § 37.2205a.[1] The relief Roddy requested included compensatory damages, exemplary damages, attorney fees and injunctive relief. Defendants removed the action to federal court on the basis of federal question jurisdiction. The district court denied Roddy's motion for remand and granted Defendants' motion for summary judgment. Roddy appealed both of these rulings.

## II.

The district court denied Roddy's motion to remand based upon its determination that Roddy's claim under the Michigan Elliott Larsen Civil Rights Act was completely preempted by the Railway Labor Act, 45 U.S.C. §§ 151-163, 181-188. We review the denial of a motion to remand *de novo*. *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453 (6th Cir. 1996). In conducting this review we look to the complaint at the time of removal and determine whether the action was properly removed in the first place. *Id.*

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing 28 U.S.C. § 1441(a)). "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 (2003).

Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In determining whether a complaint arises under federal law we apply the "well-pleaded complaint" rule. *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 514 (6th Cir. 2003). Under this rule "we examine the 'well pleaded' allegations of the complaint and ignore

---

[1]This statute provides in pertinent part:

> An employer, employment agency, or labor organization, other than a law enforcement agency of this state or a political subdivision of this state, shall not in connection with an application for employment or membership, or in connection with the terms, conditions, or privileges of employment or membership request, make, or maintain a record of information regarding a misdemeanor arrest, detention, or disposition where a conviction did not result.

M.C.L. § 37.2205a.

potential defenses." *Beneficial Nat. Bank*, 539 U.S. at 6. "[F]ederal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392. The well-pleaded complaint rule recognizes that the plaintiff is the master of his complaint. *Loftis*, 342 F.3d at 515. Accordingly, if the plaintiff chooses to bring a state law claim, that claim cannot generally be "recharacterized" as a federal claim for the purpose of removal. *Id.* (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)). It is settled law that "a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 393 (emphasis in original). *See also Beneficial Nat. Bank,* 539 U.S. at 6 ("[A] defense that relies on . . . the pre-emptive effect of a federal statute will not provide a basis for removal.")*; Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987) ("Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court.").

A state claim may be removed to federal court in only two circumstances – when Congress expressly so provides,[2] or "when a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Beneficial Nat. Bank*, 539 U.S. at 8. The "complete preemption" doctrine, developed in the case law, recognizes that "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life*, 481 U.S. at 63-64. Complete preemption applies where "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 393 (quoting *Metro. Life*, 481 U.S. at 65). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393.

To date the Supreme Court has recognized complete preemption under only three statutes: § 301 of the Labor Management Relations Act, 1947 (LMRA), 29 U.S.C. § 185, § 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., and § 30 of the National Bank Act, 12 U.S.C. §§ 85 & 86. *Beneficial Nat. Bank*, 539 U.S. at 6-7, 11. As we noted in *Alongi v. Ford Motor Co.*, 386 F.3d 716 (6th Cir. 2004), it is the "unusually powerful pre-emptive force of § 301" that places it in the small category of statutes that not only preempt state law but also authorize removal of actions that sought relief only under state law. *Id.* at 723-24, (quoting *Beneficial Nat. Bank*, 539 U.S. at 7). In those cases where the Supreme Court has found complete preemption, "the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Beneficial Nat. Bank*, 539 U.S. at 8.

Complete preemption that supports removal and ordinary preemption are two distinct concepts. *Warner v. Ford Motor Co.* 46 F.3d 531, 535 (6th Cir. 1995) (en banc). "The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted under [a federal statute] does not establish that they are removable to federal court." *Caterpillar*, 482 U.S. at 398. Complete preemption that permits removal is reserved for statutes "designed to occupy the regulatory field with respect to a particular subject and to create a superseding cause of action" while ordinary preemption applies to statutory sections that arguably supersede conflicting state laws without creating the right of removal. 46 F.3d at 535. "[T]he congressional intent necessary to confer removal jurisdiction upon the federal district courts through complete preemption is expressed through the creation of a parallel federal cause of action that would 'convert' a state cause of action into the federal action for purposes of the well-pleaded complaint rule." *Strong v. Telectronics Pacing Sys., Inc.*, 78 F.3d 256, 260 (6th Cir. 1996) (citing *Warner*, 46 F.3d at 534-35).

---

[2] As an example, the Supreme Court noted that the Price-Anderson Act contains an unusual preemption provision, 42 U.S.C. § 2014(hh), that not only gives federal courts jurisdiction over tort actions arising out of nuclear accidents but also expressly provides for removal of such actions brought in state court even when they assert only state-law claims. *Beneficial Nat. Bank*, 539 U.S. at 6 (citing *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 484-85 (1999)).

In the absence of explicit direction from Congress, the Supreme Court has stated that it would be reluctant to find the extraordinary preemptive power that converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule. *Metro. Life*, 481 U.S. at 64-65.[3] As we recently noted:

> Complete preemption is a narrow exception to the well-pleaded complaint rule, whereby plaintiff is master of his complaint and can choose to assert only state law claims, in situations where Congress has indicated an intent to occupy the field so completely that any ostensibly state law claim is in fact a federal claim for purposes of arising-under jurisdiction.

*AmSouth Bank v. Dale*, 386 F.3d 763, 776 (6th Cir. 2004). *See also Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 468 n. 11 (6th Cir. 2002) ("Without evidence of Congress's intent to transfer jurisdiction to federal courts, there is no basis for invoking federal judicial power.").

> It is true that the doctrine of complete preemption goes beyond the usual contours of the well-pleaded complaint rule, in that it requires courts to attend to the underlying substance of a plaintiff's cause of action, and not merely whether it is denominated as arising from state or federal law. But, as the Supreme Court has instructed us, the complete preemption doctrine does not abrogate the federal courts' traditional focus on the complaint, in deciding questions of removal jurisdiction.

*Alongi*, 386 F.3d at 727.

The Supreme Court discussed the circumstances under which the RLA will preempt state law claims in *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260-64 (1994). This discussion, however, only involved concepts of ordinary preemption and did not address the issue of complete preemption.

Grand Trunk has cited two Sixth Circuit cases in support of its contention that the RLA completely preempts Roddy's state law civil rights claim. In *McCall v. Chesapeake & Ohio R.R.*, 844 F.2d 294 (6th Cir. 1988), we held that the plaintiff's state law Handicappers Civil Rights Act claim was preempted by the RLA. *Id.* at 303. *McCall* does not impact our present discussion. The plaintiff's claim in *McCall* was removed to federal court on diversity grounds and our preemption analysis involved ordinary preemption rather than complete preemption.

Grand Trunk has also cited *Beard v. Carrollton R.R.*, 893 F.2d 117 (6th Cir. 1989). In *Beard* we noted in passing that the plaintiff's state law claims had not been removed "improvidently and without jurisdiction" to federal court. *Id.* at 121. Although this finding suggests that the RLA completely preempted plaintiff's state law claims, we did not engage in any discussion of the distinction between complete preemption and ordinary preemption and we did not analyze the RLA for Congressional intent. Most of our opinion in *Beard* was dedicated to the issue of ordinary preemption rather than complete preemption. It appears to this Court that to the extent we found complete preemption in *Beard*, that holding has been undermined by subsequent cases addressed above that have discussed the prerequisites for a finding of

---

[3]This reluctance was emphasized by Justice Brennan in his concurring opinion:

While I join the Court's opinion, I note that our decision should not be interpreted as adopting a broad rule that any defense premised on congressional intent to pre-empt state law is sufficient to establish removal jurisdiction. The Court holds only that removal jurisdiction exists when, as here, "Congress has *clearly* manifested an intent to make causes of action . . . *removable to federal court*." *Ibid.* (emphasis added). In future cases involving other statutes, the prudent course for a federal court that does not find a clear congressional intent to create removal jurisdiction will be to remand the case to state court.

*Metro. Life*, 481 U.S. at 67-68 (Brennan, J., concurring).

complete preemption. *Accord*, *Tyree v. Burlington Northern and Santa Fe Ry. Co.*, 973 F. Supp. 786, 791 (W.D. Tenn. 1997) (concluding that *Beard* is no longer good law).

In determining whether the RLA completely preempts Roddy's state civil rights claim we must begin by looking at the RLA itself. Congress passed the RLA "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines*, 512 U.S. at 252. The framework provided by the RLA is a mandatory arbitral mechanism for "the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 151a. The RLA gives the National Railroad Adjustment Board exclusive jurisdiction over disputes that arise out of collective bargaining agreements. *Beard*, 893 F.2d at 121-22. The existence of a mandatory arbitration provision, however, does not answer the question of whether Congress intended the RLA to occupy the field so completely that any "ostensibly state law claim" touching on railroad employment "is in fact a federal claim" for purposes of removal jurisdiction. *See AmSouth Bank*, 386 F.3d at 776.

The Eleventh Circuit examined the RLA in *Geddes v. Am. Airlines, Inc.*, 321 F.3d 1349 (11th Cir. 2003). Based upon the language and substance of the RLA and its legislative history, the Eleventh Circuit concluded that the RLA did not have the extraordinary preemptive force necessary to create federal removal jurisdiction. *Id.* at 1357. The court noted that in contrast to the LMRA and ERISA, the RLA does not create a federal cause of action for the resolution of disputes. *Id.* at 1354. Accordingly, federal courts are not in a position to fashion a cohesive body of federal law for enforcement of collective bargaining agreements under the RLA. *Id.* Moreover, there is no indication that Congress intended for federal courts to acquire jurisdiction solely to ensure that minor disputes are redirected from the courts to the boards of adjustment. *Id.*

The Third Circuit similarly found "no evidence in the RLA or its legislative history of a Congressional intent to permit recharacterization and removal of what purports to be a state claim." *Ry. Labor Execs. Ass'n v. Pittsburgh & Lake Erie R.R. Co.*, 858 F.2d 936, 942 (3d Cir. 1988). The Ninth Circuit has also rejected a finding that a plaintiff's state law claims were completely preempted by the RLA. *Price v. PSA Inc.*, 829 F.2d 871, 876 (9th Cir. 1987). "Congress has not indicated, as it did with LMRA § 301 and ERISA, that the RLA is 'so powerful as to displace entirely any state cause of action.'" *Id.* (quoting *Metro. Life*, 481 U.S. at 64).[4] *See also Tyree*, 973 F. Supp. at 792 (holding that removal was improper because "it is clear that the RLA does not satisfy the complete preemption doctrine because it does not create a parallel federal cause of action.").

Not all of the circuits are in agreement. The Eighth Circuit has held that "the RLA's preemptive force is so extraordinary that it takes over the whole field of railroad labor disputes arising from collective bargaining agreements." *Deford v. Soo Line R.R. Co.,* 867 F.2d 1080, 1085 (8th Cir. 1989). More recently the Eighth Circuit held in *Gore v. Trans World Airlines*, 210 F.3d 944, 949 (8th Cir. 2000), that the plaintiff's state law claims of false arrest, negligence, libel and slander, and invasion of privacy were completely preempted by the RLA and were removable to federal court because they were inextricably intertwined with the provisions of the labor contract. *Id.* at 950. *See also Anderson v. American Airlines, Inc.*, 2 F.3d 590 (5th Cir. 1993) (holding that employee's workers compensation retaliation claim was not completely preempted by RLA because claim did not require interpretation of the CBA).

On review we conclude that the Eleventh Circuit's analysis of the RLA in *Geddes*, 321 F.3d at 1353-57, is most consonant with the Supreme Court's instructions on how to approach issues of complete preemption. Complete preemption represents a substantial departure from the firmly established well-

---

[4] The Ninth Circuit has identified an apparent conflict within the circuit as to whether or not the RLA has complete preemptive power. *See Holman v. Laulo-Rowe Agency*, 994 F.2d 666, 669 n.4 (9th Cir. 1993) (comparing *Price v. PSA Inc.*, 829 F.2d 871 (9th Cir. 1987) with *Grote v. Trans World Airlines, Inc.*, 905 F.2d 1307 (9th Cir. 1990) (citing *Price* with approval on a related issue, but then holding, without discussion, that the RLA does have complete preemptive power)).

pleaded complaint rule. This Court is hesitant to find such a departure absent clear Congressional intent to that effect. We agree with the Eleventh Circuit that Congress has not clearly manifested an intent to make all causes of action that touch on railroad employment removable to federal court.

Indeed, it would be difficult to find such extraordinary preemptive force when the Supreme Court has specifically rejected the contention that the RLA broadly preempts state-law claims based on discharge or discipline:

> In *Andrews v. Louisville & Nashville R. Co.*, 406 U.S. 320, 92 S. Ct. 1562, 32 L.Ed.2d 95 (1972), the Court held that a state-law claim of wrongful termination was pre-empted, *not* because the RLA broadly pre-empts state-law claims based on discharge or discipline, but because the employee's claim was firmly rooted in a breach of the CBA itself.

*Hawaiian Airlines*, 512 U.S. at 257 (emphasis in original). We conclude that the RLA does not have the extraordinary preemptive force necessary to create federal removal jurisdiction.

Grand Trunk has suggested in the alternative that the district court's finding of complete preemption finds support in the Railroad Administration Regulations at 49 C.F.R. § 219.1 *et seq.* In *AmSouth* we rejected the contention that a federal regulation could completely preempt state law claims. We noted that although an agency has the ability to promulgate regulations with the force of federal law and therefore has the ability to preempt state causes of action through ordinary preemption, it does not have the ability to create a right of action where Congress has not intended it do so. 386 F.3d at 776-77. "While the agency can create federal law, it cannot expand federal jurisdiction." *Id.* at 777.

We conclude that there was no removal jurisdiction in this case and that the case should be remanded to state court. Because there is no removal jurisdiction, we do not have jurisdiction to reach the question of whether Roddy's state claim is in fact preempted by federal law. We agree with the Third and Eleventh Circuits that "[s]tate courts are competent to determine whether state law has been preempted by federal law and they must be permitted to perform that function in cases brought before them, absent a Congressional intent to the contrary." *Geddes*, 321 F.3d at 1357 (quoting *Ry. Labor Execs. Ass'n*, 858 F.2d at 942). *See also Price*, 829 F.2d at 876 ("We express no opinion on the merits of PSA's federal preemption defense. We have confidence in the ability and willingness of state courts to enforce federal defenses.").

### III.

For the foregoing reasons, the denial of plaintiff's motion to remand is **REVERSED**, the entry of summary judgment is **VACATED**, and the case is **REMANDED** with instructions to **REMAND** the entire action to the Shiawassee County Circuit Court for the State of Michigan for further proceedings.