Melissa **MERSMANN**, Plaintiff,

v.

**CONTINENTAL AIRLINES**,
et al., Defendants.

**Civil Action No. 03–5995 (JAG).**

United States District Court,
D. New Jersey.

Sept. 20, 2004.

Herbert Tan, Newark, NJ, for Plaintiff.

Robert H. Bernstein, Epstein Becker & Green, P.C., Newark, NJ, for Defendants.

## OPINION

GREENAWAY, District Judge.

This matter comes before the Court on the Motion of Plaintiff Melissa Mersmann ("Plaintiff") to remand this action to New Jersey Superior Court and the Motion of Defendant Continental Airlines, Inc. ("Defendant" or "Continental") to dismiss the Complaint, pursuant to FED. R. CIV. P. 12(b)(1) and FED. R. CIV. P. 12(b)(6). On April 16, 2004, United States Magistrate Judge G. Donald Haneke issued a Report and Recommendation ("R & R"), pursuant to FED. R. CIV. P. 72(b) and L. CIV. R. 72.1(a)(2), wherein he recommended that this Court: (1) deny Plaintiff's Motion to Remand; and (2) convert Defendant's Motion to Dismiss into a Motion for Summary Judgment, and grant the motion in favor of Defendant. This Court concludes that Plaintiff's Motion to Remand should be granted for the reasons set forth in this Opinion.

## BACKGROUND

Plaintiff, a New Jersey resident, was previously employed as a flight attendant by Defendant, a company incorporated in Delaware with its principal place of business in Texas. (Notice of Removal dated December 16, 2003 ("Notice of Removal"), at ¶ 4.) Plaintiff was over 40 years old when she was terminated from her employment with Defendant on or about March 5, 2002. (Amended Complaint dated February 12, 2004 ("Am.Compl."), at ¶ 9.)

Plaintiff initially filed a six-count Complaint against Defendant Continental Air-lines in New Jersey Superior Court on or around August 15, 2003.[1] According to the Notice of Removal, Continental was served with the Complaint on or about November 21, 2003, and timely removed the action on December 16, 2003, on the grounds that this Court had diversity and federal question jurisdiction. On February 6, 2004, Defendant served its motion to dismiss, and on February 13, 2004, Plaintiff amended her Complaint to add two additional defendants, David Lucas ("Lucas") and Christine Scott ("Scott"), both of whom are alleged to be Continental employees and New Jersey residents.[2]

In the Amended Complaint, Plaintiff alleges that, on or about February 17, 2002, as she was working on a flight from Aruba to Newark, she was accused by younger and less senior flight attendants, including Lucas, of "various dereliction of duties." (Am.Compl.¶ 5.) Plaintiff further alleges that Scott was charged with investigating the accusations and "performed no investigation in regards to Plaintiff's responses or defenses." (Am. Compl. ¶ 6.) Therefore, she claims: (1) her termination resulted from age discrimination, in violation of the New Jersey Law Against Discrimination ("LAD"), Continental's personnel policies, and the public policy of New Jersey (Count I); (2) her termination resulted from unlawful gender discrimination, in violation of LAD (Count II); (3) Lucas and Scott "aided and abetted" the discriminatory conduct of Continental, in violation of the LAD (Count III); (4) "Defendants' policies and procedures amounted to an agreement of employment," which Defendants breached, and defendants breached "the implied contract of good faith and fair dealing" (Count IV); (5) negligent, reckless, and intentional infliction of emotional

---

1. Plaintiff's first complaint is dated August 15, 2003, but not signed by her or her counsel.

2. In its reply brief, Continental claims that Scott is a resident of New Jersey and Lucas is a resident of Pennsylvania.

distress (Count V); and (6) violations of Article I, ¶¶ 5, 6, 18, and 19 of the New Jersey Constitution (Count VI).[3]

Continental asserts that this action was properly removed and should not be remanded. Specifically, Continental asserts that Lucas and Scott were joined for the purposes of destroying diversity jurisdiction, which existed at the time of removal. Continental further claims that its removal of this action, on the additional grounds set forth in § 1331 and § 1337[4], was proper because the Complaint arises in part from allegations concerning the employment contract between the parties—a dispute which was arbitrated in favor of Defendant, pursuant to the terms of its collective bargaining agreement with its employees. Continental argues that because the resolution of disputes, pursuant to the terms of a collective bargaining agreement, is governed by the Railway Labor Act ("RLA"), this action arises under federal law.

Defendant also contends that the Complaint should be dismissed, because: (1) the discrimination claims are "minor" disputes within the meaning of the RLA, which places exclusive jurisdiction over such grievances in an arbitral forum, not in any state or federal court; (2) an arbitral forum already has decided that Plaintiff was terminated for "just cause" based on misconduct, including a positive alcohol test; (3) Plaintiff has not stated a prima facie case for discrimination under the LAD; and (4) LAD claims preempt any other common law remedies.

The R & R concluded that this Court has diversity and federal question jurisdiction over this action. Although the R & R did not recommend the dismissal of the individual defendants, it found that Plaintiff had been dilatory in adding Lucas and Scott, and had joined them for the improper purpose of defeating the Court's jurisdiction over the action. The R & R further found that this Court has federal question jurisdiction, on the basis that, even without diversity jurisdiction, the RLA completely preempted Plaintiff's state law claims. In reaching this conclusion, the R & R relied on *Capraro v. United Parcel Serv. Co.*, 993 F.2d 328 (3d Cir.1993).[5]

Objections, of a sort, were filed in response to the R & R. Plaintiff filed a "Letter Brief in Response to Proposed Findings and Recommendations" with the Court on May 11, 2004, but the letter, in

---

3. The cited paragraphs of the New Jersey Constitution provide a range of protections, only some of which would appear to have any relation to the allegations in this case. Paragraph 5 prohibits discrimination, in certain contexts, "because of religious principles, race, color, ancestry or national origin." Paragraph 16 concerns the quartering of soldiers. Paragraph 18 protects, *inter alia,* the right "to petition for redress of grievances." Paragraph 19 provides that persons in private employment have the right to bargain collectively.

4. 28 U.S.C. § 1337 provides, in part, that district courts have original jurisdiction of "any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies ...."

5. It appears that *Capraro* concerned the application of ordinary preemption principles, not the complete preemption doctrine, to state law claims which were asserted to be preempted by the RLA. *Capraro* involved an airline pilot who sued UPS for terminating him prior to the expiration of his probationary period. The case was removed from state court to federal court, 993 F.2d at 329 n. 2, but the court did not engage in a complete preemption analysis to determine whether removal was proper, ostensibly because the issue was not before the Court. As explained more fully below, ordinary preemption is a defense that may be raised in state court, but the existence of a defense arising under federal law may not establish a basis for removal jurisdiction. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

substance, appears to oppose a motion for summary judgment.[6] By letter dated May 24, 2004, Defendant opposed the Court's consideration of Plaintiff's May 11, 2004 letter brief as untimely and substantively deficient.

This Court agrees with Defendant that Plaintiff's objections to the R & R should not be considered. First, Plaintiff's objections do not appear to have been timely filed with the Court. Plaintiff did not file objections to Magistrate Judge Haneke's April 16, 2004 R & R until May 11, 2004. Under the local rules in this district, parties are required to file objections to an R & R within 10 days of receipt. *See* L. CIV. R. 72.1(c)(2). Second, there is no explanation for the delay. Third, Plaintiff's objections do not comply with the substantive requirements of Rule 72.1(c)(2). Under this rule, an objecting party must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis of such objection." Plaintiff's letter brief wholly fails to comply with this requirement.

Before turning to the merits of Defendant's motion to dismiss, this Court must determine whether it has subject matter jurisdiction over this action. Upon review, this Court concludes that it does not have subject matter jurisdiction over this matter; as a result, this action is remanded to state court.

### *LEGAL STANDARDS*

#### A. *Standard of Review*

A Magistrate Judge's recommended disposition of a dispositive motion is subject to *de novo* review. *See In re U.S. Healthcare*, 159 F.3d 142, 145–46 (3d Cir.1998);

*Temptations, Inc. v. Wager*, 26 F.Supp.2d 740, 743 (D.N.J.1998); *see also* FED. R. CIV. P. 72(b).

#### B. *Removal and Subsequent Joinder of Non–Diverse Parties*

The removal statute, 28 U.S.C. § 1441, provides that "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court ... where such action is pending."

28 U.S.C. § 1447(e) provides that if "after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."

Whether remand should be permitted upon the joinder of non-diverse parties depends on several factors, including: (1) the extent to which the purpose of the amendment is to defeat jurisdiction; (2) whether plaintiff has been dilatory in asking for amendment; (3) whether plaintiff will be significantly injured if amendment is not allowed; and (4) any other factors bearing on the equities. *Massaro v. Bard Access Sys.*, 209 F.R.D. 363, 369 (E.D.Pa. 2002) (citing *Hensgens v. Deere & Co.*, 833 F.2d 1179 (5th Cir.1987)).

■ The removing party bears a "heavy burden of persuasion" towards showing that a non-diverse party was fraudulently joined. *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir.1992). If there is "even a possibility that a state court would

---

**6.** Defendant never filed a formal motion for summary judgment, although it acknowledged that it had submitted additional materials, outside the pleadings, for consideration in connection with its motion to dismiss, which might require this Court to treat a motion to dismiss as one for summary judgment, pursuant to Rule 12(b), if those materials were reviewed and considered.

find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Id.* Joinder is fraudulent when there is "no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against defendants or seek a joint judgment." *Id.*

### C. *Removal and Preemption*

The well-pleaded complaint rule applies to the original and removal jurisdiction of district courts. *See Franchise Tax Bd. v. Constr. Laborers Vac. Trust,* 463 U.S. 1, 11 n. 9, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). The well-pleaded complaint rule requires that a federal question be presented on the face of a plaintiff's complaint to establish jurisdiction. A corollary to this rule is that, even if a federal question is not apparent on the face of the complaint, jurisdiction still may exist "if the Congress has completely preempted a particular area" by federal statute such that the civil complaint states claims that are "necessarily federal in character." *Krashna v. Oliver Realty, Inc.,* 895 F.2d 111, 112 (3d Cir. 1990). Federal jurisdiction is unavailable "unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that [the claim] is 'really' one of federal law." *Franchise Tax Bd.,* 463 U.S. at 13, 103 S.Ct. 2841. Complete preemption is a "narrowly drawn jurisdictional rule for assessing federal removal jurisdiction when a complaint purports to raise only state law claims. It looks beyond the complaint to determine if the suit is, in reality, 'purely a creature of federal law.'" *Geddes v. Amer. Airlines, Inc.,* 321 F.3d 1349, 1353 (11th Cir.2003).

■ In the Third Circuit, if the federal law does not create a federal cause of action "vindicating the same interest the plaintiff's state cause of action seeks to vindicate, recharacterization as a federal claim is not possible and there is no claim arising under federal law to be removed and litigated in the federal court." *Goepel v. Nat'l Postal Mail Handlers Union,* 36 F.3d 306, 312 (3d Cir.1994) (quoting *Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R.R. Co.,* 858 F.2d 936, 942 (3d Cir.1988)). Complete preemption only applies, so as to permit removal, when: (1) "the statute relied upon by the defendant contains civil enforcement provisions within the scope of which the plaintiff's state claim falls"; and (2) there exists a "clear indication of a congressional intention to permit removal despite plaintiff's exclusive reliance on state law." *Railway Labor,* 858 F.2d at 942 (construing *Caterpillar Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). Even if the first requirement is met, it is still incumbent upon the federal court to "further inquire whether there is a clear indication" of congressional intent to permit removal. *Id.* (citing *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)).

Complete preemption is distinct from "ordinary" preemption. The former establishes a basis for removal jurisdiction, but the latter cannot. Ordinary preemption is a defense, which may be raised in either state or federal court, and argues that state law claims have been displaced by federal law. Under the well-established rule that a federal question defense may not serve as the basis for removal, *see Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), ordinary preemption cannot establish removal jurisdiction. Removal based on a federal law defense is improper even if the federal defense is anticipated in the complaint, and even if both parties admit that the defense is the "only question truly at

issue in the case." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998).

### D. *Complete Preemption and Federal Statutes*

As a general matter, "there is a very limited area in which a federal court in a case removed from a state court is authorized to recharacterize what purports to be a state law claim as a claim arising under a federal statute." *Railway Labor*, 858 F.2d at 942. Indeed, very few federal statutes have been recognized to so completely preempt an area of law so as to establish removal jurisdiction in cases alleging, on their face, only state law causes of action. Section 301 of the Labor Management Relations Act ("LMRA") and section 502 of the Employee Retirement Income Security Act ("ERISA") are two such provisions. The following briefly discusses the application of the complete preemption doctrine to each of these statutes.

### 1. *LMRA*

Section 301 of the LMRA provides federal jurisdiction over controversies involving collective bargaining agreements and "authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements." *Hawaiian Airlines v. Norris*, 512 U.S. 246, 260 n. 7, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994) (quoting *Textile Workers v. Lincoln Mills of Ala.*, 353 U.S. 448, 451, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957)).

In *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), the Court held that an employer's suit against a union and its members was completely preempted by section 301 of the LMRA because the dispute centered around the "no strike" clause of the collective bargaining agreement. In *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), a tort action concerning a disability insurance plan included in a collective bargaining agreement, the Court held that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a section 301 claim [citing *Avco* ], or dismissed as pre-empted by federal labor-contract law." The Court concluded that the asserted right, though stated in tort, "was rooted in contract" and "could have been pleaded as a contract claim under § 301." *Id.* Although *Lueck* was instituted in state court and never removed, the Court appears to have concluded that the claims were "necessarily federal in character" and removable.

Consistent with its view that complete preemption should operate in a limited area, the Court held that removal of state law claims arising from independent, as opposed to collective bargaining, agreements was improper. *See Caterpillar v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). The defendant had argued that claims for breach of independent contracts should be construed as claims for breach of the collective bargaining agreement, because any "independent" agreements had been superseded by the collective bargaining agreement. The Supreme Court was unpersuaded. It stated that "individual employment contracts are not inevitably superseded by any subsequent collective bargaining agreement covering an individual employee." *Id.* at 396, 107 S.Ct. 2425. The defendant further contended that plaintiffs could have brought suit under section 301, but the Court found that the defendant's "basic error is its failure to recognize that a plaintiff covered by a collective bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract right relied upon is *not* a collective bargaining agreement." *Id.* at

396, 107 S.Ct. 2425. The Court reiterated a well-established jurisdictional principle— that "a defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated. If a defendant could do so, the plaintiff would be master of nothing." *See id.* at 399, 107 S.Ct. 2425.

### 2. *ERISA*

Section 502(a)(1)(B) of ERISA states, in part, that a "civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

In *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), the Court held that an action for breach of contract, retaliatory discharge, and wrongful termination of disability benefits fell within section 502. The Court relied on, *inter alia*, a House Conference Report, which stated that "suits to enforce benefits rights under the plan . . . may be brought not only in U.S. district courts but also in State courts of competent jurisdiction . . . *such actions . . . are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 [of the LMRA]."* 481 U.S. at 65–66, 107 S.Ct. 1542. Finding that plaintiff's state claims were necessarily federal in character, *Metro. Life* held that removal of the claims was proper. *Cf. Franchise Tax Bd.*, 463 U.S. at 13, 103 S.Ct. 2841 (finding that ERISA did not completely preempt a suit by the state seeking to collect taxes from a welfare benefit trust, where the state law claim could be resolved without reference to ERISA and where ERISA did not create a federal cause of action for the state to enforce its rights).

### E. *Complete Preemption under the RLA*

#### 1. *The RLA*

In passing the Railway Labor Act, Congress sought to establish an effective mechanism for resolving disputes between employers, unions and employees that would minimize interruptions in national transportation. Congress extended the coverage of the RLA from the railway industry to include the air transportation industry in 1936, in order to provide air carriers and their employees with the same benefits and to impose similar obligations. *See Int'l Ass'n of Machinists v. Cent. Airlines, Inc.*, 372 U.S. 682, 685, & n. 3, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963).

The RLA divides disputes into two categories: major and minor. Major disputes relate to the "formation of collective bargaining agreements or efforts to secure them." *Consol. Rail Corp. v. Ry. Labor Executives Ass'n*, 491 U.S. 299, 302, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989). Minor disputes are "those involving the interpretation or application of existing labor agreements." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. at 256, 114 S.Ct. 2239.

Parties in a major dispute are required to undergo a lengthy process of bargaining and mediation, and until those procedures are exhausted, they are obligated to maintain the status quo. *Consol. Rail*, 491 U.S. at 302, 109 S.Ct. 2477. District courts have subject matter jurisdiction to enjoin a violation of status quo pending completion of these procedures. *Id.* at 303, 109 S.Ct. 2477. If mediation fails, the parties may submit their dispute to arbitration. *Id.* at 303 n. 3, 109 S.Ct. 2477.

Parties involved in a minor dispute must arbitrate their dispute before an adjust-

ment board established by the employer and the unions representing the employees. *Id.* at 303, 109 S.Ct. 2477. The adjustment board has exclusive jurisdiction over minor disputes, and there is limited judicial review of board determinations. *Id.* at 304, 109 S.Ct. 2477 (stating that courts may enjoin strikes arising out of minor disputes).

### 2. *Railway Labor*

In *Railway Labor,* the Third Circuit Court of Appeals held that the RLA did not completely preempt state claims, where they fell outside the scope of the RLA's enforcement provisions and where evidence of Congress' intent to permit removal of the claims was lacking. *See Railway Labor,* 858 F.2d at 936. The *Railway Labor* plaintiffs were railway employees who alleged claims against their employer under a Pennsylvania fraudulent conveyances statute. The Court of Appeals found that the state law protected interests separate and apart from those addressed by the RLA, and that there was no "affirmative evidence of a Congressional intent to permit removal despite the plaintiff's exclusive reliance on state law." *Id.* at 942.

After concluding that it lacked jurisdiction, the Court of Appeals held that the district court should not have reached the issue of forum preemption, i.e., it should not have dismissed the case upon finding that state court was preempted as a forum. Instead, the district court should have reserved the issue for the state court on remand, because state courts are competent to decide forum preemption issues. *See id.* at 943. On remand, the state court could determine whether, as defendant argued, it was preempted as a forum because the action was a "minor" dispute within the exclusive jurisdiction of the board of adjustment. *See id.*

### 3. *Hawaiian Airlines*

Subsequent to *Railway Labor,* the Supreme Court decided *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994), which involved an airline mechanic who alleged that he had been fired in violation of, *inter alia,* Hawaii's whistleblower protection statute and the public policy expressed in the Federal Aviation Act. The Court undertook a preemption analysis that was "virtually identical" to that adopted in cases involving section 301 of the LMRA. Specifically, it examined whether the plaintiff's state law causes of action involved "rights and obligations that exist independent of the collective bargaining agreement." 512 U.S. at 260, 114 S.Ct. 2239. In support of its application of an LMRA preemption analysis to a case that purported to implicate the RLA, *Hawaiian Airlines* specifically observed that the case before it was "remarkably similar" to *Lingle v. Norge Div. of Magic Cheft, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), which held that section 301 of the LMRA preempts a state law claim if its resolution "depends on an interpretation of the collective bargaining agreement." *Hawaiian Airlines,* 512 U.S. at 261, 114 S.Ct. 2239; *id.* at 263 & n. 9, 114 S.Ct. 2239 (citing cases, including a New Jersey state court decision, for the view that "lower courts, too, have recognized the appropriateness of the *Lingle* standard to RLA preemption analysis"). *Lingle* had involved an employee who had been discharged for filing a false worker's compensation claim, filed a grievance under the terms of the collective bargaining agreement, and later filed suit alleging retaliatory termination in state court. The state court had concluded that section 301 preempted her claims, but the Supreme Court reversed, on the ground that resolution of the plaintiff's state law claims did not require interpretation of the collective

bargaining agreement. Similarly, in *Hawaiian Airlines*, the Court concluded that plaintiff's state causes of action did not depend on interpretation of the collective bargaining agreement, and held that plaintiff's state claims were not preempted by the RLA.

*Hawaiian Airlines* is relevant to this Court's jurisdictional analysis to the extent that it concerns the complete preemption doctrine at all. Indeed, there is a circuit split on this issue—i.e., courts are divided as to whether *Hawaiian Airlines* merely sets forth an analysis for ordinary preemption by the RLA, or actually addresses the reach of the complete preemption doctrine. *See* 16 MOORE'S FEDERAL PRACTICE 3D § 107.14[4][D] (construing *Hawaiian Airlines* as a complete preemption case) (describing the split as between the Eleventh Circuit, which reads *Hawaiian Airlines* as an ordinary preemption case, and the Second, Seventh, Eighth, and Ninth Circuits) (citing cases); *see, e.g., Geddes v. Amer. Airlines, Inc.*, 321 F.3d 1349, 1357 (11th Cir.2003) (following the Third Circuit Court of Appeals' analysis in *Railway Labor* and construing *Hawaiian Airlines* as an ordinary, not complete, preemption case).

The specific issue in *Hawaiian Airlines* was whether or not the action constituted a "minor" dispute, such that the plaintiff's state law actions were "preempted." *Hawaiian Airlines*, 512 U.S. at 253, 114 S.Ct. 2239. When this exact issue arose in *Railway Labor*, the defendant argued that the complaint was a "minor" dispute, subject to the exclusive jurisdiction of the adjustment board.[7] (Continental basically raises the same argument in support of its motion to dismiss this action.) The Third Circuit Court of Appeals treated the issue as one concerning forum preemption, not jurisdiction, and thus, had no occasion to address the merits of this argument after concluding it lacked removal jurisdiction. *See Railway Labor*, 858 F.2d at 939 (treating removability and forum preemption as separate issues and stating that "we ... conclude that the district court should have addressed the removal issue first and remanded to the state court, leaving the issues of forum preemption for determination by the state court").

Whether, in the context of the RLA, this distinction between forum and complete preemption survives *Hawaiian Airlines* is an open question. The Third Circuit Court of Appeals has not reassessed, in light of *Hawaiian Airlines*, the specific issue it opined upon in *Railway Labor*—whether the defense that a complaint is actually a "minor" dispute under the RLA raises a problem of subject matter jurisdiction and not mere forum preemption.[8]

Certainly, there is some language in *Hawaiian Airlines* that suggests that the Court may have been enunciating a complete preemption analysis for claims that are asserted to arise under the RLA. In

---

7. The specific argument raised by the defendant in *Railway Labor* was that plaintiffs had to "rely upon the collective bargaining agreement in order to establish its status and that of its members as creditors [of defendant]" in order to allege a claim pursuant to the state fraudulent conveyance statute. *Railway Labor*, 858 F.2d at 943.

8. The Court of Appeals has construed *Hawaiian Airlines*, albeit in a different context. In a case involving the preemptive scope of section 301 of the LMRA, not the RLA, the Court of Appeals briefly examined *Hawaiian Airlines* and read the decision as emphasizing "the limitations" of *Lingle. See Voilas v. Gen. Motors Corp.*, 170 F.3d 367, 375 (3d Cir.1999). Specifically, according to the Court of Appeals, *Hawaiian Airlines* instructs that: (1) "the existence of a potential [collective bargaining agreement-based] remedy [does] not deprive an employee of independent remedies available under state law"; and (2) questions about an employee's or employer's motives or conduct do not require interpretation of collective bargaining agreements. *Id.*

endorsing the analytical framework of *Lingle*, *Hawaiian Airlines* perhaps could be read to approve other aspects of the opinion. For example, *Lingle* observed, albeit in a footnote, that its ordinary preemption standard, i.e., whether resolution of a claim depended on the interpretation of a collective bargaining agreement, also had guided its jurisdictional determinations in complete preemption cases. *See Lingle*, 486 U.S. at 406 n. 5, 108 S.Ct. 1877 (citing *Avco Corp. v. Machinists*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (permitting removal), and *Caterpillar Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (finding removal improper)). In the same footnote, the *Lingle* court noted that *Avco* and *Caterpillar*, which explicitly addressed the applicability of the complete preemption doctrine to the LMRA, were "examples of the *Lucas Flour*[9] § 301 preemption principle," even though *Lucas Flour* is an ordinary preemption case.[10] *Lingle*, 486 U.S. at 406 n. 5, 108 S.Ct. 1877.

Despite *Lingle*'s observation that an ordinary preemption standard under the LMRA had served as a test for jurisdiction, *Hawaiian Airlines*' adoption of *Lingle* for resolving RLA preemption issues does little to persuade this Court that *Hawaiian Airlines* should be read as a complete preemption case. *Lingle* does not purport to decide the case on complete preemption grounds. Even the *Lingle* court's removal jurisdiction was based on diversity of citizenship, not because the alleged claims were completely preempted by the LMRA.[11]

For the following reasons, this Court concludes that *Hawaiian Airlines* enunciated ordinary preemption principles, and did not address the reach of the complete preemption doctrine under the RLA.

First, complete preemption was not a central issue in *Hawaiian Airlines*. *See also Geddes*, 321 F.3d at 1355 (stating that *Hawaiian Airlines* dealt "strictly with the substantive defense of ordinary federal preemption ... and was not concerned at all with removal under 28 U.S.C. § 1441(a)"). Indeed, *Hawaiian Airlines* involved two state court actions instituted by a former airline mechanic—one against the employer and the other against three of the airline's officers. Both cases reached the Supreme Court of Hawaii, which reversed the lower court decisions and concluded that the state tort claims were not preempted by the RLA. On appeal from the Supreme Court of Hawaii, the Supreme Court of the United States consolidated both cases, and affirmed. Federal jurisdiction, by way of the com-

---

9. *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

10. *Lingle* described *Lucas Flour* as a case that arose on appeal from the Washington Supreme Court, i.e., one that never needed to address whether the complete preemption doctrine provided a basis for removal jurisdiction. *Lingle* characterized the issue in *Lucas Flour* as a "straightforward question of contract interpretation." *Lingle*, 486 U.S. at 403, 108 S.Ct. 1877; *see also Livadas v. Bradshaw*, 512 U.S. 122, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994) (citing *Lucas Flour* for an ordinary preemption principle).

11. It is unclear if the Court of Appeals for the Third Circuit would conclude that *Lingle* ad-

dresses the complete preemption doctrine. *Compare Wood v. Prudential Ins. Co. of America*, 207 F.3d 674, 684 (3d Cir.2000) (Stapleton, J., dissenting) (citing to *Lingle* as "a case of ordinary, rather than complete preemption" in a case involving complete preemption by ERISA) *with Antol v. Esposto*, 100 F.3d 1111, 1117 (3d Cir.1996) (citing *Lingle*, in a string of other cases that, unlike *Lingle*, directly address the complete preemption doctrine, in support of its conclusion that claims "based squarely on a collective bargaining agreement or requiring analysis of its terms are preempted by section 301 [of the LMRA] and are removable to the federal courts").

plete preemption doctrine, was not an issue in the case.

In addition, construing *Hawaiian Airlines* as marking the boundaries of the complete preemption doctrine under the RLA requires this Court to infer that the Court decided the case on complete preemption grounds without expressly considering the doctrine in its opinion. Doing so departs from the cautious approach that courts have taken with respect to this doctrine. According to the Third Circuit Court of Appeals, the Supreme Court has made the following "clear" about the complete preemption doctrine: (1) it "operates in a very narrow area"; and (2) "it should not be applied unless there is affirmative evidence of a Congressional intent to permit removal despite the plaintiff's exclusive reliance on state law." *Railway Labor*, 858 F.2d at 942.

In *Geddes*, the Eleventh Circuit Court of Appeals articulated additional grounds for reading *Hawaiian Airlines* as an ordinary preemption case, which this Court finds persuasive. First, it observed that *Hawaiian Airlines* "did not engage in any inquiry into congressional intent to permit removal" or "the standard for complete preemption." *Geddes*, 321 F.3d at 1356. In examining whether Congress intended for the RLA to preempt completely the negligence, defamation and negligent supervision claims before it, it found no evidence of such intent. It further found no "indication that Congress intended for federal courts to acquire jurisdiction solely to ensure that minor disputes are redirected from the courts to the boards of adjustment." *Geddes*, 321 F.3d at 1354 (also citing *Railway Labor* ).

Second, while the "common purposes," "parallel development of the LMRA and RLA," and the "desirability of having a uniform common law of labor law preemption" supported the Court's application of the LMRA preemption standard to RLA cases in *Hawaiian Airlines*, *see* 512 U.S. at 263 n. 9, 114 S.Ct. 2239, *Geddes* concluded that these same grounds would not justify applying, again, a "virtually identical" standard, in the complete preemption context. For example, in "stark contrast" to the RLA, "the LMRA … [has] express language creating a federal cause of action for the resolution of disputes" and "explicit direction from Congress in the legislative history" authorizing federal jurisdiction. *Id.* at 1354–55. Furthermore, *Geddes* noted that the purpose of creating a uniform body of common law would not be furthered in RLA cases by asserting removal jurisdiction over purportedly "minor" disputes, which federal courts do not have the power to adjudicate. *Id.* at 1356.

Therefore, the two-prong test set forth in *Railway Labor* continues to govern this Court's determination of whether it has removal jurisdiction over Plaintiff's state claims by way of the complete preemption doctrine. As stated earlier, *Railway Labor* requires a Court to examine whether: (1) the RLA creates a cause of action that vindicates the same interests the plaintiff's state cause of action seeks to vindicate; and (2) if so, whether there is clear congressional intent to permit removal despite the plaintiff's exclusive reliance on state law. Furthermore, in accordance with *Railway Labor*, if no basis for removal jurisdiction exists, "a district court should remand the case to the state court without addressing other issues," and " 'ordinary preemption' … [and] 'forum preemption' issues … must be left for determinations after remand." *Railway Labor*, 858 F.2d at 943.

### DISCUSSION

This Court must be satisfied that it has subject matter jurisdiction over this action. It is undisputed that the Amended Complaint, on its face, alleges state causes of

action. Therefore, in light of Plaintiff's joinder of additional defendants to this action, this Court must examine whether it still has diversity jurisdiction over this action. If joinder has been proper, thereby precluding this Court's jurisdiction on the basis of diversity, this Court must then decide whether or not federal question jurisdiction exists. Because this Court concludes that it lacks jurisdiction, the Complaint is dismissed, pursuant to FED. R. CIV. P. 12(b)(1), and remanded to the Superior Court of New Jersey.

## A. The Amended Complaint

As a preliminary matter, this Court must determine which of the pleadings, the initial or amended complaint, shall be relevant for purposes of determining this Court's jurisdiction. For the following reasons, the Court shall treat the Amended Complaint as the relevant pleading.

As stated above, Plaintiff served the initial complaint on Continental on or about November 21, 2003. Defendants timely removed this action. Several days after Defendant served its motion to dismiss the Complaint, Plaintiff filed an amended pleading as of right. In substance, Plaintiff amended the complaint to replace the retaliatory discharge claim under LAD in Count II with a gender discrimination claim under LAD, and to add an "aiding and abetting" claim, with Scott and Lucas as new defendants, in Count III. The complaint otherwise remained largely unchanged.

As a procedural matter, Plaintiff was entitled to amend her pleadings as of right. Joinder, of course, requires amendment of the pleadings, which, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, is permitted "once as a matter of course at any time before a responsive pleading is served." A motion to dismiss is not a responsive pleading within the meaning of Rule 15, and therefore, Conti-

nental's filing of a motion did not require Plaintiff to seek leave of Court to amend. *See* 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1194 (2d ed.1990).

Continental contends that this Court still should disregard the First Amended Complaint because it was filed subsequent to the date on which it served its motion to dismiss. *See* Comment ¶ 3 to L. CIV. R. 7.1 (citing *Johnson v. Guhl*, 91 F.Supp.2d 754, 759 n. 2 (D.N.J.2000), for the view that a court *may* refuse to consider a second amended complaint, which was properly filed without leave of court, on the basis that it was filed after the court arranged a briefing schedule and one week before the moving party's reply brief was complete). This Court finds that the circumstances in this action are sufficiently distinguishable from *Johnson* so as to warrant consideration of the Amended Complaint. *Johnson* involved a court-arranged briefing schedule, plaintiffs who already had amended their complaint once as of right, and a second amended pleading that was filed only one week before the reply brief was complete. In this instance, Plaintiff amended the Complaint close to the time it likely received Continental's motion papers, and weeks before Defendant's reply brief was served.

Therefore, the Amended Complaint shall serve as the relevant pleading.

## B. Joinder and Diversity Jurisdiction

Pursuant to 28 U.S.C. § 1447(e), this Court may dismiss parties joined after removal to a district court, where joinder destroys diversity jurisdiction. As stated above, whether remand should be permitted upon the joinder of non-diverse parties depends on several factors, including: (1) the extent to which the purpose of the amendment is to defeat jurisdiction; (2) whether plaintiff has been dilatory in ask-

ing for amendment; (3) whether plaintiff will be significantly injured if amendment is not allowed; and (4) any other factors bearing on the equities. *Massaro v. Bard Access Sys.*, 209 F.R.D. 363, 369 (E.D.Pa. 2002) (citing *Hensgens v. Deere & Co.*, 833 F.2d 1179 (5th Cir.1987)). Ultimately, the removing party carries a "heavy burden of persuasion" towards showing that a non-diverse party was fraudulently joined. *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir.1992). If there is "even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Id.* Joinder is fraudulent when there is no "colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against defendants or seek a joint judgment." *Id.* The R & R concludes that the joinder of parties was dilatory and an effort by plaintiff to destroy this Court's jurisdiction.

▉ This Court ultimately cannot agree that the record sufficiently supports the dismissal of Scott and Lucas. The Court is aware that joinder of these parties occurred shortly after Defendant moved to dismiss the Complaint, and approximately two months after the Complaint was removed to this Court. In addition, Plaintiff did not explain the delay in adding Scott and Lucas. Even so, a determination of whether the joined parties should be dismissed is governed by the standard set forth in *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir.1992), which provides that courts should not dismiss parties on the basis of fraudulent joinder, unless

there is no "colorable ground" for asserting claims against them. Here, the claims against Scott and Lucas are raised pursuant to the LAD, which recognizes a cause of action against individuals who allegedly "aid and abet" violations of the statute. *See* N.J. Stat. Ann. § 10:5–12(e). More specifically, Scott, a non-diverse defendant, is alleged to be the person who investigated the accusations against plaintiff and ultimately terminated her.[12] (Am. Compl.¶¶ 6, 9.) At this early stage of the litigation, and in light of the heavy burden upon the removing party to show that joinder occurred for improper reasons, this Court concludes that Defendants Lucas and Scott should not be dismissed, pursuant to 28 U.S.C. § 1447(e). Therefore, this Court does not have diversity jurisdiction over this action.

### C. Complete Preemption and Federal Question Jurisdiction

The absence of diversity jurisdiction does not conclude this Court's inquiry. Removal jurisdiction may exist if the action could have been brought originally in federal court, pursuant to 28 U.S.C. §§ 1331 or 1337.

▉ In its reply brief, Continental argues that "[e]ven if [joinder of non-diverse parties] could defeat diversity, this Court has independent, original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337. Plaintiff's claims present a federal question because they are preempted by the RLA." [13] (Reply Brief dated March 4, 2004 ("Reply Br."), at 6.) The R & R agreed, concluding that, in the absence of diversity jurisdiction, the Complaint still raises a federal question, apparently on complete preemption grounds. (R & R at

---

12. At least both parties agree that Scott is a non-diverse defendant. Plaintiff alleges that Lucas is a resident of New Jersey, but Continental argues, in its reply brief, that Lucas is a resident of Pennsylvania.

13. Neither party addressed the *Railway Labor* decision in their briefs.

10 (describing complete preemption as a corollary to the well-pleaded complaint rule).) This Court cannot agree, and in the absence of a federal question, concludes that this Court does not have removal jurisdiction.

As set forth above, a corollary to the well-pleaded complaint rule is that, when a complaint involves an area of law that is completely preempted by federal law, the federal law is a proper basis for removal to a federal court. Continental essentially argues that, in the absence of diversity, the complete preemption doctrine should apply to establish this Court's federal question jurisdiction over this action. (Reply Br. at 6.)

As the removing party, Continental bears the burden of demonstrating that jurisdiction exists. This Court concludes that Continental has not met this burden.[14] Under *Railway Labor*, a party seeking to establish removal jurisdiction on the basis of the complete preemption doctrine must demonstrate that the state law claims fall within the scope of a federal cause of action, and also that Congress intended to permit the removal of the asserted state claims. *Railway Labor*, 858 F.2d at 936. In this action, it is unclear that any cause

of action under the RLA could provide the relief for the state claims alleged in the Amended Complaint. Plaintiff's claims seek relief for alleged age and gender discrimination, emotional distress, and violations of constitutional rights.[15] In addition, Plaintiff alleges that Defendant breached a contract and the implied contract of good faith and fair dealing, but these claims are not alleged to arise from a collective bargaining agreement.[16] Plaintiff also alleges that the discriminatory employment practices of the defendants violated the "personnel policies" of Continental, but it is unclear to this Court what these personnel policies are, and more generally, how this claim for relief seeks to vindicate the same interests as the RLA. As a general matter, it is unclear which of these allegations would amount to "artfully pleaded" RLA claims. Furthermore, there is little affirmative evidence before this Court to support the conclusion that Congress intended any of Plaintiff's claims to be recast as federal causes of action under the RLA.

Finally, Defendant argues that the discrimination claims should be dismissed because an arbitral forum already has concluded that the termination of Plaintiff was justified.[17] This defense, which contends

---

**14.** The Court is aware that the Amended Complaint and Plaintiff's motion to remand were filed after Continental served its motion to dismiss. The Court is further aware that, because diversity jurisdiction existed in this Court prior to Plaintiff's filing of the amended pleading, Defendant focused its argument on ordinary preemption, i.e., the displacement of the state law claims by the RLA and was limited to addressing the issue of complete preemption in its reply brief. Even so, this Court is always under an obligation to be satisfied that it has subject matter jurisdiction over the action before it. *See* FED. R. CIV. P. 12(h)(3).

**15.** Although Plaintiff seeks relief pursuant to paragraph 19 of Article I of the New Jersey Constitution, which protects the right of employees to collectively bargain, and arguably

could cover the interests governed by the RLA, the contours of this claim are entirely unclear and insufficient to establish a finding of complete preemption and jurisdiction.

**16.** Other than excerpted portions of the grievance and arbitral mechanism, which were attached to Continental's motion to dismiss, the collective bargaining agreement itself is not before the Court.

**17.** The petitioners made, and lost, this same argument in *Hawaiian Airlines*, 512 U.S. at 265, 114 S.Ct. 2239. The Court observed that whether an employer's action was "arguably justified" by a provision in the collective bargaining agreement that permitted termination for "just cause" was relevant to policing the line between "minor" and "major" disputes

that Plaintiff should be estopped from raising a claim where her termination already was found to be legitimate by an arbitral proceeding, is one of ordinary preemption and may be raised by Defendant in state court. *See Railway Labor,* 858 F.2d at 943 (stating that "ordinary" or "forum preemption" issues "must be left for determinations [by state courts] after remand").[18] Without jurisdiction, this Court cannot proceed to dismiss claims.

### CONCLUSION

For the foregoing reasons, this Court concludes that it does not have subject matter jurisdiction. Plaintiff's motion to remand is GRANTED, and Defendant's motion to dismiss is DENIED as MOOT. This matter should be REMANDED to the Superior Court of New Jersey.

but not to the "threshold question [of] whether the dispute was subject to the RLA in the first place." *Hawaiian Airlines,* 512 U.S. 266–67, 114 S.Ct. 2239. As discussed, to find jurisdiction based on the existence of a federal question, Plaintiff's claim, or an element thereof, must turn substantially on the resolution of a federal question or fall within an area completely preempted by federal law.

18. This Court observes that, in an ordinary preemption context, discrimination claims have survived ordinary preemption defenses, because they arise from rights independent of collective bargaining agreements. *See, e.g., Espinal v. Northwest Airlines, Inc.,* 90 F.3d 1452 (9th Cir.1996) (holding that a disability discrimination claim alleged pursuant to California's Fair Employment and Housing Act was not preempted by the RLA); *Taggart v. TWA Inc.,* 40 F.3d 269 (8th Cir.1994) (holding that state law discrimination claim was not preempted by the RLA).